IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM C. SKIBBE,

        Plaintiff,

v.                                                                                      CIVIL ACTION NO.  2:08-cv-01393

RESIDENTIAL CREDIT SOLUTIONS, INC., et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is the defendants Residential Credit Solutions, Inc. ("RCS") and Deutsche Bank National Trust's ("Deutsche") Motion for Summary Judgment [Docket 70]. For the reasons discussed below, the defendants' motion is **GRANTED**.

I.     **Background**

In May 2005, the plaintiff, William C. Skibbe, responded to a solicitation for a mortgage from Dana Capital Group ("Dana") and Aames Funding Corporation ("Aames"). (*See* Skibbe Dep. Tr. [Docket 75-1], at 39-40). During the mortgage loan transaction with the plaintiff, Dana served as a broker and Aames served as the lender and servicer.[1] As broker, Dana arranged for an independent appraiser, Kevin Withrow, to appraise the plaintiff's property. (*See* Appraisal by Kevin B. Withrow [Docket 75-1]). Withrow estimated the home had a fair market value of $84,500 as of April 27, 2005. (*Id.*). A retrospective appraisal conducted by the plaintiff's

---

[1] Accredited Home Lenders, Inc. ("Accredited") is the successor-in-interest to Aames as lender and servicer of the mortgage loan obtained by the plaintiff. On May 5, 2009, Accredited filed for bankruptcy and was later liquidated. (*See* Order [Docket 56]). I approved the withdrawal of Accredited's counsel on January 30, 2014. (*See id.*). On June 9, 2014, the plaintiff voluntarily dismissed Accredited as a named defendant. (*See* Order [Docket 96]).

appraiser valued the home at $51,200 as of May 2005. (*See* Appraisal by Teresa S. Moore [Docket 75-1]).

On May 7, 2005, the loan was closed for $71,825. (*See* Adjustable Rate Note [Docket 75-3]). According to the plaintiff, Dana representatives conducted the closing at his place of employment, the Rent-A-Haul Center, during work hours. (Skibbe Dep. Tr. [Docket 75-1], at 40, 51-52). Because the plaintiff was the only individual manning the store, he alleges that he was distracted during the closing. (*Id.* at 51-52). The plaintiff asked the representatives if the closing could be held at different time, but they stated that the closing had to take place immediately or the rate could increase. (*See id.* at 53).

Due to the distractions and the irregular closing, the plaintiff claims he was unaware that he was signing a loan with an adjustable interest rate rather than a fixed rate. (*Id.* at 52). According to the plaintiff, his prior discussions with Dana indicated that the loan would have a fixed rate. (*See* Skibbe Dep. Tr. [Docket 76-1], at 67). The loan also included $3,018.25 in fees to Dana, including a yield spread premium. (*See* HUD Settlement Statement [Docket 75-3]). The loan was subsequently assigned to Residential Credit Solutions, Inc. ("RCS"). (*See* Assignment of Deed of Trust [Docket 70-3]).

After entering into the loan contract, the plaintiff lost his job and fell behind on his mortgage payments. (*See* Skibbe Dep. Tr. [Docket 70-2], at 44-46). Thereafter, the plaintiff filed for Chapter 7 bankruptcy. (*See id.* at 44). On November 29, 2007, the bankruptcy court authorized RCS to proceed with the foreclosure sale. (*See* Agreed Order Granting Relief from Automatic Stay [Docket 70-4]). According to the Agreed Order Granting Relief from Automatic Stay, the bankruptcy court permitted the plaintiff to remain in the house until January 16, 2008. (*Id.*).

On January 29, 2008, Deutsche Bank National Trust ("Deutsche") purchased the plaintiff's home at the foreclosure sale. (Substitute Trustee's Report of Sale [Docket 70-5]). Despite the prior order of the bankruptcy court, the plaintiff refused to surrender possession of the property. In February 2008, the plaintiff filed suit against Aames, RCS, Deutsche, and Dana in state court. In April 2008, the state court suit was removed to this court and immediately referred under our Local Rules of Civil Procedure to the United States Bankruptcy Court for the Southern District of West Virginia as an adversary proceeding. (*See In re Skibbe*, Case No. 2:08-ap-02024 [Docket 1]). Upon motion, this court withdrew reference from the bankruptcy court. (*See In re Skibbe*, Case No. 2:08-ap-02024 [Docket 44]). From May 2009 to April 2013, the case was stayed because of Accredited's Chapter 11 bankruptcy, which ended in liquidation of the company. (*See* Order [Docket 20]; Order [Docket 33]).

The plaintiff has amended his complaint three times. The Third Amended Complaint asserts four counts: (1) the loan was unconscionable under W. Va. Code § 46A-2-121; (2) the defendants fraudulently originated the loan to induce the plaintiff into entering into it; (3) the acts of each defendant were undertaken in the furtherance of a joint venture or conspiracy and Dana and the appraiser were agents of the remaining defendants; and (4) the loan was originated in violation of W. Va. Code § 31-17-8. (Third Am. Compl. [Docket 67] ¶¶ 13-31). The Third Amended Complaint also removed Dana as a defendant. (*See id.*).

The remaining defendants moved to dismiss the Third Amended Complaint and for summary judgment on all counts. In his reply to the motion for summary judgment, the plaintiff abandoned Count II (Fraudulent Origination) and Count III (Joint Venture/Agency). (Pl.'s Mem. of Law in Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [Docket 75], at 2 n.1). The plaintiff stated that the "Defendants' motion for summary judgment on these two claims is therefore moot

and the counts should be dismissed." (*Id.*). On May 21, 2014, I dismissed Count IV (Illegal Loan

Contract) for failure to state a claim upon which relief could be granted. (*See* Mem Op. & Order

[Docket 82]). Because the plaintiff had abandoned Counts I and III, I also dismissed those

counts. (*See id.*). Therefore, the remaining claim is Count I (Unconscionable Contract). (*See id.*).

Accordingly, I must now determine whether Count I survives the defendants' motion for

summary judgment.

## II.      Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the

evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986). Instead, the court will draw any permissible inference from the underlying facts in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most

favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete

evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*,

477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of

proof on an essential element of his or her case and does not make, after adequate time for

discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a

mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to

preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### III.    Discussion

The plaintiff alleges that the loan is unenforceable because it is procedurally and substantively unconscionable. (*See* Third Am. Compl. [Docket 67] ¶¶ 13-17). In West Virginia, "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." Syl. Pt. 4, *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 220 (W. Va. 2012). Although unconscionability was traditionally an equitable defense to enforcement of a contract (*see* 8 *Williston on Contracts* § 18:1 (4th ed. 2013)), it may be asserted as a cause of action in West Virginia. *See* W. Va. Code §§ 46A-2-121, 46A-5-101.

Unconscionability may arise in two distinct ways: procedurally or substantively. "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction." Syl. Pt. 10, *Genesis Healthcare Corp.*, 729 S.E.2d at 221.

In contrast, "[s]ubstantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." Syl. Pt. 12, *Genesis Healthcare Corp.*, *id*. In determining whether contract terms are substantively unconscionable, courts consider "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and

public policy concerns." Syl. Pt. 8, *State ex rel. Johnson Controls, Inc. v. Tucker*, 729 S.E.2d 808, 812 (W. Va. 2012).

A claimant must prove both procedural and substantive unconscionability to render a contract term unenforceable. *See* Syl. Pt. 9, *Genesis Healthcare Corp.*, 729 S.E.2d at 221; Syl. Pt. 6, *Tucker*, 729 S.E.2d at 812. "However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Syl. Pt. 9, *Genesis Healthcare Corp.*, 729 S.E.2d at 221.

"Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court." Syl. Pt. 7, *id.* (quoting Syl. Pt. 1, *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 750 (W. Va. 1986)). Whether a contract is unconscionable will necessarily turn upon the facts of each particular case. *See Genesis Healthcare Corp.*, 729 S.E.2d at 229 ("[C]ourts should assess whether a contract provision is substantively unconscionable on a case-by-case basis."); *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640, 659 (W. Va. 2012) (affirming finding of unconscionability "given the particular facts involved in this case"). Although common law unconscionability arises out of equity, the Supreme Court of Appeals of West Virginia has stated that courts cannot decide disputed issues of fact for statutory unconscionability claims. *See* Syl. Pt. 4, *Herrod v. First Republic Mortgage Corp.*, 625 S.E.2d 373, 375 (W. Va. 2005).

If a court finds a contract or its terms to be unconscionable, the court "may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result." Syl. Pt.

8, *Genesis Healthcare Corp.*, 729 S.E.2d at 221. As the plaintiff has failed to produce sufficient evidence of substantive unconscionability, I do not address whether the loan transaction was procedurally unconscionable.

The plaintiff claims that the loan is unconscionable because "the loan was artificially inflated to beyond the value of the property." (Pl.'s Resp. [Docket 75], at 8). As a result, the plaintiff asserts that he is unable to sell or refinance the home on more favorable terms. As I thoroughly discussed in *McFarland v. Wells Fargo Bank, N.A.*, the disparity between the loan principal and the value of the plaintiff's home is insufficient to show that the loan was substantively unconscionable. *See* No. 2:12-cv-07997, 2014 WL 1805480, at *3 (S.D. W. Va. May 7, 2014).

However, the plaintiff also points to other evidence of substantive unconscionability. The plaintiff alleges the defendants increased the interest rate so that Dana, the broker, could receive a kickback in the form of a yield spread premium. "A 'yield spread premium' is a payment from a lender to a mortgage broker for originating and processing a loan with a higher-than-market interest rate." *Sampson v. Chase Home Fin.*, 667 F. Supp. 2d 692, 693 (S.D. W. Va. 2009); *see also Herrod v. First Republic Mortgage Corp., Inc.*, 625 S.E.2d 373, 376-77 (W. Va. 2005) ("[A] yield spread premium . . . is ostensibly paid to the broker by the lender for the purpose of enabling the borrower to avoid higher up-front fees at the closing. The cost to the borrower for this arrangement is payment of a higher interest rate on the loan they obtain instead of the lower rate for which they qualified." (citations omitted)). In this case, the defendants charged both an up-front fee of $2,300.00 and the yield spread premium of $718.25. (*See* Ex. I, HUD Settlement Statement [Docket 75-3]). In addition, due to the yield spread premium, the interest rate was

increased. Therefore, the plaintiff claims that his "loan was much costlier to him, inuring only a financial benefit to the Defendants." (Pl.'s Resp. [Docket 75], at 8).

The defendants do not dispute these facts. Rather, the defendants contend that the plaintiff has failed to present sufficient and admissible evidence that Dana received a yield spread premium. (*See* Reply in Supp. of Mot. for Summ. J. on Behalf of Defs. RCS and Deutsche [Docket 76], at 6, 10). The defendants argue that the plaintiff cannot testify that Dana received theses fees and cannot introduce the settlement statement through his testimony. The defendants also contend that the plaintiff cannot call upon any party representatives to testify with respect to the settlement statement. According to the defendants, although the plaintiff has generally identified these representatives as potential fact witnesses, the plaintiff has not identified or deposed the witnesses. In addition, because Aames and Dana no longer exist, the defendants conclude that the plaintiff will not call upon these representatives at trial. The defendants' objections merely speculate that the plaintiff cannot authenticate the settlement statement. Even if Aames and Dana are now defunct, the companies's status will not prevent the plaintiff from calling on their representatives at trial. Therefore, it is not a foregone conclusion that the plaintiff cannot authenticate and admit the settlement statement at trial.

As this evidence is undisputed and may be admissible, I can decide the issue of substantive unconscionability as a matter of law. *See* Syl. Pt. 4, *Herrod v. First Republic Mortgage Corp.*, 625 S.E.2d 373, 375 (W. Va. 2005) ("Only when there are no factual disputes in existence can an unconscionability claim under West Virginia Code § 46A-2-121 be determined as a question of law based on the undisputed factual circumstances and resolved

through summary judgment.").[2] I conclude that this evidence does not establish that the loan terms were substantively unconscionable.

Although the Supreme Court of Appeals of West Virginia has suggested that excessive fees, including a yield spread premium, can be evidence of substantive unconscionability, in this case, the fees charged to the plaintiff are not overly harsh, one-sided, or oppressive. *See Herrod*, 625 S.E.2d at 380. In *Herrod v. First Republic Mortgage Corp., Inc*., the plaintiffs alleged that their loan was unconscionable because of excessive fees and an inflated appraisal. *Id.* According to the plaintiffs, their fees amounted to more than 10.5% of the total loan. *Id.* at 380. In particular, the plaintiffs' expert opined that

> Actual compensation paid to broker First Security on the Herrod loan . . . includes $6,600 [broker fee and loan origination fee] in fees alone, all of which were financed into the loan. The yield spread added $3,304 in additional fees to First Security, paid by the Herrods through a higher note rate, bringing total compensation to $9,904.00, or roughly 10.5% of the loan amount. . . .

*Id.* at 380 n.23. The court did not precisely define "loan amount." In its opinion, it is unclear whether "loan amount" is the same as the principal or if it consists of the total cost of the loan, which could include fees.

Finding that the plaintiffs presented some evidence of unconscionability, the Supreme Court of Appeals concluded that summary judgment was improperly granted and the excessive fees should have been considered by the trial court. *Herrod*, 625 S.E.2d at 380. *Herrod* did not

---

[2] In *Herrod*, the trial court concluded that the plaintiffs "produced no evidence that the fees paid to [the broker] were 'excessive[.]'" 625 S.E.2d at 379. It was unclear whether the parties disputed that the defendants actually charged the fees. Despite its prior discussion concerning a trial court's ability to decide unconscionability where the facts are undisputed, the Supreme Court of Appeals reversed the trial court because the plaintiffs "introduced sufficient evidence on each of these issues [excessive fees and inflated appraisal] to present questions of fact." *Id.* at 380. The court then remanded on the issue of unconscionability. *Id.* at 381. If it was actually undisputed that the defendant charged these fees, it is unclear why a trial court could not determine the issue as a matter of law. After *Herrod*, the court has reaffirmed the principle that a trial court can determine whether a loan is unconscionable as a matter of law. *See* Syl. Pt. 7, *Genesis Healthcare Corp.*, 729 S.E.2d at 221 ("Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court."). As it is undisputed that the fees were charged, I conclude that I may determine whether the loan was substantively unconscionable.

hold that fees that are 10.5% of the total loan are substantively unconscionable. The opinion merely stated that this evidence should be considered.

Here, considering the fees received by Dana, I **FIND** that the fees were not excessive. Dana received $3,018.25 in fees, including the yield spread premium. Dana's compensation compromises approximately 3.2% of the loan principal. Beyond the bare allegation that the yield spread premium made his loan more expensive, the plaintiff does not elaborate how Dana's compensation made the loan overly harsh or one-sided. In addition, the plaintiff has not explained how the other loan fees, combined with the yield spread premium, are excessive. The plaintiff merely directs the court's attention to the HUD Settlement Statement and claims that the fees are unconscionable. Because the broker fees are not overly excessive, and because the plaintiff does not present evidence establishing that other terms of the loan are overly harsh or one-sided, I do not find that the loan is substantively unconscionable. Accordingly, the defendant's motion for summary judgment as to Count I is **GRANTED.**

## IV.  Conclusion

For the reasons discussed above, the defendants' motion for summary judgment [Docket 70] is **GRANTED.** The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      June 9, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE